**In re Anonymous No. 31 D.B. 88**

Disciplinary Board Docket no. 31 D.B. 88.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

KELLER, *Member,* September 18, 1989 — Pursuant to rule 208(d) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of

the Supreme Court of Pennsylvania submits its findings and recommendations regarding the above-captioned petition for discipline.

## HISTORY OF PROCEEDINGS

Respondent was admitted to practice law in the Commonwealth of Pennsylvania on May 26, 1958 and presently has an office at [   ].

On April 11, 1988, Office of Disciplinary Counsel filed a four-count petition for discipline. All four charges alleged in the petition arose from respondent's involvement in an acrimonious divorce proceeding against his wife, [A], in which respondent represented himself throughout most of the divorce proceedings. In counts I through IV, disciplinary counsel alleged the following: During a hearing into the divorce and support action, respondent misrepresented to the court the price he received for a sailboat; during a support hearing in February, respondent falsely accused his wife of being a lesbian and named two innocent women as participants in the relationship; although respondent was directed by a court order to return certain farm equipment he had removed from the marital property, respondent falsely testified at a hearing that he did not have control over the equipment and had no capacity to return it; and although respondent was directed by a court order to pay support, he failed to pay, despite his ability to do so.

On May 24, 1988, respondent filed an answer in which he neither denied nor admitted the allegations. In accordance with Disciplinary Board Rule 89.54(d), the allegations were deemed to be at issue. Respondent also filed a new matter in which he charged that his divorce proceedings were prejudicial and violated due process. Disciplinary Coun-

sel made no reply to the new matter because rule 208(b)(3)(4), Pa.R.D.E. does not provide for any pleadings other than a petition for discipline and an answer.

The matter was referred to Hearing Committee [ ] comprised of [ ]. A prehearing conference was conducted on August 11, 1988 before Hearing Committee Chairperson [ ]. The evidentiary hearings were held on November 14, 15, 16, and 17, 1988. On June 1, 1989, the hearing committee filed its report recommending disbarment.

On June 21, 1989 respondent filed a brief on exceptions and requested oral argument. Respondent excepted to the findings of fact as being contrary to and unsupported by the evidence of record and specifically objected to the recommendation for disbarment. Respondent argued "that the harsh discipline of disbarment is not justified in light of the circumstances of this case involving emotionalism and a hotly contested divorce action."

On July 11, 1989 Disciplinary Counsel filed a brief opposing the respondent's exceptions, requesting adoption of the hearing committee's recommendation for disbarment.

Thereafter, oral argument was heard on July 26, 1989 before board members [ ]. The matter was adjudicated by the disciplinary board at its scheduled meeting on July 27, 1989.

## FINDINGS OF FACT

On February 27, 1984 [B], Esq., a partner of the respondent at the time, filed a complaint in divorce on behalf of respondent against respondent's wife, [A]. [A], represented by [C], Esq. filed an answer as well as a petition raising various claims under the Divorce Code on March 20, 1984.

## Sailboat Issue

In a July 3, 1985 hearing before the Honorable [D], respondent, acting as his own counsel, stated on the record, during a three-party conversation between Attorney [C], Judge [D], and respondent, that he sold his 29-foot Kings Cruiser Sailboat, known as "[E]," for $10,000.

During a subsequent hearing before Judge [D] on October 17, 1985, respondent, acting as his own counsel, once again testified that he received $10,000 for the sale of the boat. On cross-examination, Attorney [C] confronted respondent with the check respondent received for the sale of the boat which was in the amount of $15,000. In light of this evidence, respondent testified that he did in fact receive $15,000, but he paid a $5,000 commission to [F]. However, at the same hearing, after a recess, respondent stated that he wanted to correct his answer and testified that the commission "was not paid to [F] personally; it was paid to the company [F] was working for at the time."

At the hearing for discipline, respondent reverted to his original account of the events that he did pay [F] a $5,000 commission. Respondent further added that he made the payment to [F] by giving him 50 one-hundred-dollar bills which were tucked inside of an envelope.

## Sexual Misconduct Issue

During the February 19, 1985 support hearing before the Honorable [D], respondent, acting as his own counsel, testified that his wife had engaged in lesbian behavior. Respondent testified that he had actually witnessed his wife engaging in sexual conduct with a [G]. Respondent also identified [H] as another woman with whom his wife was having a lesbian relationship.

In his opinion, issued subsequent to the hearing, Judge [D] found that [A] did not engage in a lesbian relationship. Judge [D] remarked that he had trouble finding that a man of respondent's temperament would find his wife in such a compromising position and not say or do anything until he took the witness stand. However, he further concluded, despite the discrepancy between his findings and respondent's testimony, that respondent was not deliberately lying.

### Farm Equipment Issue

In September 1984, respondent removed various farm machinery from the marital property and transported it to his father's farm in Maryland. In response, [A] filed a motion for special relief on October 3, 1984, requesting among other things the return of the farm machinery to the marital property. Respondent filed an answer and cross-petition for special relief.

After a hearing on the petitions, the Honorable [I] entered an order dated October 11, 1984 requiring that "basic items of farm equipment which will include one tractor and some capability for cutting grass or hay be returned to the farm." Through his attorney, [B], Esq., respondent filed exceptions to the above order. Subsequently, no further action was taken by either party on the exceptions.

On February 26, 1985 a supplemental motion for special relief and rule to show cause was filed by [A] and after the hearing before the Honorable [J], an order was issued dated March 8, 1985, directing respondent to comply with Judge [I's] order requiring respondent to return the farm equipment. Respondent did not file an exception and did not

return the farm equipment. On May 10, 1985, [A] filed a petition for rule and adjudication of civil contempt.

After a hearing before the Honorable [D], the court entered an order dated December 27, 1985 holding respondent in civil contempt for failing to comply with the order of Judge [I] dated October 11, 1984 and Judge [J] of March 8, 1985. Respondent appealed to the Pennsylvania Superior Court. A petition for supersedeas was filed and denied. Respondent still did not return the farm equipment to the marital property. Thus, on April 7, 1986, [A] filed another petition for contempt.

During a hearing before Judge [K], respondent, acting as his own counsel, testified that he did not have the farm equipment, he gave it to his father, and he could not return the equipment. By order dated April 24, 1986, Judge [K] found respondent in contempt of court for violation of Judge [I's] October 11, 1984 order, Judge [J's] March 8, 1985 order, and Judge [D's] December 27, 1985 order and had respondent incarcerated in the [    ] County prison.

On April 29, 1986 the respondent filed a notice of appeal to the order of Judge [K]. The Pennsylvania Superior Court entered an order dated May 2, 1986 granting a supersedeas which would become effective upon respondent's return of the farm equipment to his wife or until respondent filed a security in the amount of $30,000 to ensure performance of the order.

Respondent then filed a habeas corpus proceeding to the Supreme Court of Pennsylvania and by order dated May 8, 1986, respondent was released from jail. Respondent finally returned the farm equipment and thus purged the contempt.

What is of particular significance with respect to these disciplinary proceedings is that respondent

made no attempt to return the farm equipment from October 1984 to approximately May 1986, although the farm equipment was within his control.

## Support Proceedings Issue

On November 9, 1984, [A] filed an action of support against the respondent. After a hearing before the Honorable [D], the court entered an order dated December 27, 1985 ordering respondent to pay support in the amount of $2,450 per month retroactive to December 1984. Respondent appealed to the Pennsylvania Superior Court and a petition for supersedeas was filed and issued by order of the Honorable [L]. Because respondent failed to pay support, [A] filed a petition for contempt on April 7, 1986.

By order dated April 24, 1986, Judge [K] found that respondent willfully failed to pay support and had respondent incarcerated in the [ ] County prison. (Respondent was incarcerated under the same order for the contempt of court matter involving the farm equipment.) On April 29, 1986, respondent filed a notice of appeal to the order of Judge [K]. The Pennsylvania Superior Court entered an order dated May 2, 1986 granting a supersedeas which required the respondent to deposit $15,000 or like security with the [ ] County court.

Respondent filed a habeas corpus proceeding to the Supreme Court of Pennsylvania and by order dated May 8, 1986, respondent was ordered to be released from jail. Also, respondent was given three weeks to pay $7,000 on account of the arrearage.

On December 8, 1986 the Pennsylvania Superior Court filed its opinion affirming Judge [D's] order that respondent pay spousal support in the amount of $2,450 per month retroactive to December 1984.

Respondent appealed and by order dated June 17, 1987 the Supreme Court of Pennsylvania denied respondent's appeal.

Once again respondent failed to pay the spousal support. Thus, on August 18, 1987, [A] filed a petition for civil contempt. After a hearing, Judge [K] found respondent had the ability to pay. By order dated September 3, 1987, respondent was held in contempt of court. Judge [K] sentenced respondent to six months' imprisonment which was stayed until September 10, 1987, allowing respondent the opportunity to purge himself. The court subsequently amended the order, staying the incarceration until September 30, 1987. Respondent then paid his support arrearages in full and was not incarcerated. Respondent willfully failed to pay support to his wife despite his ability to do so.

## DISCUSSION

This case, arising from respondent's involvement in an acrimonious divorce proceeding, directly confronted the hearing committee with a decision as to the truthfulness of respondent's testimony rendered under oath. The hearing committee, faced with this credibility issue, thoroughly considered the evidence, the record, and the credibility of the witnesses and determined that respondent's testimony was not credible. The committee recommended disbarment.

This board will be guided by the hearing committee's findings with respect to the matter of credibility; however, the board conducts its review of attorney disciplinary cases de novo, and may recommend whatever discipline it deems appropriate. See *Office of Disciplinary Counsel v. Lucarini,* 504 Pa. 271,

275, 472 A.2d 186, 188 (1983); *Office of Disciplinary Counsel v. Walker,* 469 Pa. 432, 366 A.2d 563 (1976).

The board agrees with the hearing committee that respondent's testimony was not worthy of belief. Respondent's negligent disregard for the truth concerning the sale of his boat and his reckless allegations against his wife with respect to sexual misconduct clearly amounted to conduct that is prejudicial to the administration of justice. The fact that respondent was "acting on his own behalf and not that of a client cannot insulate him from disciplinary action." *Montgomery County Bar Association v. Hecht,* 456 Pa. 13, 317 A.2d 597 (1974).

In regard to the sailboat, the facts indicate that respondent knew that [F] did not receive a commission for his aid in selling the sailboat. Respondent's testimony before the hearing committee directly contradicted the testimony he gave at the hearing before Judge [D] in which he stated that the commission "was not paid to [F] personally, [rather] it was paid to the company [F] was working for at the time." Respondent had no record of the payment and was unable to produce any credible evidence that the commission was paid. Furthermore, the hearing committee found credible the testimony of [F] that respondent requested [F] to state he received the commission in the event he was questioned.

With respect to the allegation of lesbianism, respondent contends that the court opinion of the Honorable [D], dated April 30, 1985, in which the court stated that it did not believe [respondent] was deliberately lying was conclusive as to his credibility on this issue. The board rejects this proposition. First, Judge [D] explicitly expressed

his doubt that "it simply is incredible under these circumstances that a man of [respondent's] temperament would find his wife in such a compromising position and not say anything and simply leave." Second, the court of common pleas has no power to make a judgment as to an attorney's professional conduct. "The power to investigate an attorney's conduct and to impose discipline is with few exceptions possessed solely by [the Supreme] Court and its official disciplinary organization." *Office of Disciplinary Counsel v. Walker,* 469 Pa. 432, 366 A.2d 563 (1976). The board concurs in the hearing committee's finding that respondent's testimony accusing his wife of engaging in a lesbian relationship and naming two innocent women as participants was not credible.

Also, respondent's refusal to acknowledge the court orders directing him to pay spousal support and to return farm equipment to the marital property was an abuse of the legal system. Respondent willfully failed to act in both matters and simply ignored his duty to comply with the numerous court orders. It is obvious that respondent chose to ignore the court orders in an effort to harass his wife. The board agrees that respondent's conduct is inexcusable and reflects adversely on those who practice law.

Pursuant to section 89.151(a) of the rules of the Disciplinary Board, the board also considered respondent's previous violation of the Code of Professional Responsibility in order to determine the appropriate discipline. See *In re Anonymous No. 28 D.B. 85,* 39 D.&C. 3d 88, 99 (1986). Respondent's previous conduct was similar to that presently before the board for review. Respondent had engaged in conduct "not only prejudicial to the

administration of justice, but also most injurious to a member of the public as well." *In re Anonymous No. 72 D.B. 83,* 35 D.&C. 3d 407 (1985). Because of the concern for laches and the statute of limitations, the respondent received a private reprimand.

In determining the appropriate discipline, the board recognizes the broad range of discipline of attorneys who have engaged in conduct similar to that of respondent. In *In re Anonymous No. 2 D.B. 86,* 46 D.&C. 3d 401 (1987), the respondent was suspended for three years for his conduct in which he continuously lied to federal investigators in an attempt to hide his receipt of unlawful gratuity. In *In re Shigon,* 462 Pa. 1, 329 A.2d 235 (1974), the respondents were found guilty of 16 charges of improper solicitation, 15 charges of submitting inflated and fraudulent medical claims to insurance carriers, seven charges of submitting false information to the court of common pleas, and five charges of attempting to suborn the testimony of a witness in an effort to impede the special judicial investigation. The respondent was suspended for five years. In another case, a respondent was disbarred for his conduct in which he lied under oath about the ownership of a particular piece of real estate. *Montgomery County Bar Association v. Hecht,* 456 Pa. 13, 317 A.2d 597 (1974).

The board also noted the grave nature of disciplinary proceedings and our responsibility to exercise the power to recommend the extreme sanction of disbarment with caution. See *In re Leopold,* 469 Pa. 384, 366 A.2d 277 (1976).

Although respondent's conduct was egregious and injurious to members of society, the board believes that disbarment is not necessary in this case and suspension from the practice of law will

adequately protect the public. In electing to suspend respondent rather than disbar, the board considered the following mitigating circumstances. Respondent was involved in a highly emotional divorce in which he represented himself. The board believes that if respondent had the good sense to retain counsel he may not have had the opportunity to allow his emotions to determine his conduct. Respondent has purged his contempt by paying the support and returning the farm equipment. Respondent, who has practiced law since 1958, was at one time the District Attorney of [  ] County and has been active in his bar association as well as the Pennsylvania Bar Association. From the testimony of the witnesses who came forth on respondent's behalf, it is apparent that respondent is well respected by his peers.

The board has only considered these factors in mitigation and in no way finds the respondent's conduct excused. In order to maintain the integrity of the legal profession and the judicial process, respondent must be severely sanctioned for his conduct.

## CONCLUSIONS OF LAW

Respondent's conduct violated the following Disciplinary Rules of the Code of Professional Conduct:

(1) D.R. 1-102(A)(3) — illegal conduct involving moral turpitude.

(2) D.R. 1-102(A)(4) — conduct involving dishonesty, fraud, deceit or misrepresentation.

(3) D.R. 1-102(A)(5) — conduct that is prejudicial to the administration of justice.

(4) D.R. 1-102(A)(6) — conduct that adversely reflects on the fitness to practice law.

(5) D.R. 7-102(A)(1) — intentionally filing a suit, asserting a position, conducting a defense, delaying a trial or taking other action on behalf of his client when he knows or when it is obvious that such action would serve merely to harass or maliciously injure another.

(6) D.R. 7-102(A)(3) — knowingly failing to disclose that which he is required by law to reveal.

(7) D.R. 7-102(A)(4) — knowingly using perjured testimony or false evidence.

(8) D.R. 7-102(A)(5) — knowingly making a false statement of law or fact.

## RECOMMENDATION

The Disciplinary Board recommends that respondent be suspended from the practice of law for a period of four years. We further recommend the costs in connection with these proceedings be assessed against respondent.

Mr. Eckell dissents and would recommend disbarment. Mr. Douglas recused himself.

Ms. Heh and Messrs. Tumolo and Stoelker did not participate in the adjudication.

## ORDER

And now, February 23, 1990, upon consideration of the report and recommendations of the disciplinary board dated September 18, 1989, it is hereby ordered that [respondent] be and he is suspended from the bar of this commonwealth for a period of four years, and he shall comply with all the provisions of rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the disciplinary board pursuant to rule 208(g), Pa.R.D.E.